UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 6:21-cr- 98- ACC- GJK
18 U.S.C. § 1343
26 U.S.C. § 7206(2)

JOHNSON W. EUSTACHE
a/k/a  Jean Lenois Eustache

**INFORMATION**

The United States Attorney charges:

**COUNT ONE**
**(Wire Fraud)**

**A.    Introduction**

At times material to this Information:

The Defendant and his Business Operations

1.    JOHNSON W. EUSTACHE ("EUSTACHE") was a resident of
the Middle District of Florida.

2.    On or about December 3, 2019, EUSTACHE was convicted of
the following felony offenses in the Circuit Court of the Eighteenth Judicial
Circuit, in and for Brevard County, Florida: (1) Unauthorized Practice of
Law; and (2) Organized Fraud to Obtain Property.   At that time EUSTACHE
was sentenced to five years' probation for each offense.   EUSTACHE

remained subject to this term of probation between December 3, 2019 and the date of this Information.

3.      Paradise Center A&R Immigrant Inc. was a Florida corporation with its place of business located in Palm Bay, Florida for which JOHNSON W. EUSTACHE was the President.

4.      During 2019 and 2020, Paradise Center A&R Immigrant Inc. had few or no employees other than EUSTACHE.  For 2019 and 2020, Paradise Center A&R Immigrant Inc. did not report any payroll or wages to federal agencies.

The CARES Act

5.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

6.      In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate

assistance to individuals, families, and organizations affected by the COVID-19 emergency.

7.  Among its various provisions, the CARES Act authorized the SBA to guarantee loans under the Paycheck Protection Program ("PPP"), and the full principal amount of the loans could qualify for forgiveness.  Borrowers were required to use PPP loan proceeds only for enumerated purposes, including payroll costs, rent and utilities, and mortgage interest payments. Knowing misuse of PPP funds would subject borrowers to additional liability, such as charges for fraud.

8.  Under the PPP, the loan amount for qualifying small businesses was calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula considered the borrower's total payroll costs from the preceding twelve months for all domestic employees. Once an average monthly payroll cost was established, the borrower would multiply that figure by 2.5 to arrive at a total maximum PPP loan amount.

9.  To apply for a PPP loan, a potential borrower electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that would administer the loan and serve as custodian of the funds. On the SBA Form 2483, an authorized representative of the business was required to certify information regarding business operations.

Those certifications included that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

10.     Further, when submitting the SBA Form 2483, the authorized representative certified his understanding that, should the PPP funds be knowingly used for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant was also required to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents, including any documents submitted to verify the applicant's payroll expenses. Such supporting documents could include payroll processor records, bank records, wage records, payroll tax filings with the Internal Revenue Service, or other records sufficient to demonstrate the qualifying payroll amount.

11.     Finally, the applicant was required to certify the following warning regarding false statements and other criminal penalties:

> I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more

than $5,000; and, if submitted to a federally insured institution, under
18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or
a fine of not more than $1,000,000.

12.     PPP loan applications would then be processed by participating

lenders. If a PPP loan application was approved, the participating lender

funded the PPP loan using its own monies, which were 100% guaranteed by

the SBA. Data from the application, including information from the

borrower, the total amount of the loan, and the listed number of employees,

was transmitted by the lender to the SBA in the course of processing the loan.

13.     Further provisions of the CARES Act, in conjunction with an

officially declared disaster by the United States Government, allowed for the

SBA to offer Economic Injury Disaster Loan (EIDL) funding to business

owners negatively affected by the COVID-19 pandemic.

14.     Using the SBA online portal, EIDL applicants submitted

personal and business information in support of each EIDL application.  The

application process involved filling out assorted data fields relating to the size

of the affected business entity, the ownership of said business, and other

information such as the number of employees and gross business revenues

realized in the 12 months prior to COVID-19 impact on the national

economy.  The application included a paragraph where the applicant affirmed

that the information submitted was true and correct under the penalty of

perjury and applicable criminal statutes.

15.     This information furnished by the applicant was then used by SBA application evaluation systems to calculate the principal amount of money the small business was eligible to receive in the form of an EIDL.

PPP Lenders Cross River Bank and BlueVine

16.     Cross River Bank, a financial institution located in the District of New Jersey, participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

17.     BlueVine, a financial institution located in the Northern District of California, assisted Cross River Bank with receiving, reviewing, and approving PPP loan applications.

**B.      The Scheme and Artifice**

18.     Beginning in or about March 2020, and continuing through in or about April 2021, in the Middle District of Florida and elsewhere, the defendant,

JOHNSON W. EUSTACHE,

did knowingly, and with intent to defraud, devise and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, the substance of which scheme and artifice is described below.

6

### C.    Manner and Means of the Scheme and Artifice

19.    The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

a.    It was part of the scheme and artifice to defraud that the defendant would and did submit and cause the submission of false and fraudulent PPP and EIDL loan applications to lenders in the names of various businesses owned and controlled by the defendant, his relatives, and his girlfriend M.F.

b.    It was further part of the scheme and artifice to defraud that the defendant's materially false, fraudulent, and misleading representations regarding these businesses would and did cause the SBA and lenders to approve and disburse many of the PPP and EIDL loans sought by the defendant to bank accounts controlled by the defendant.

c.    It was further part of the scheme and artifice to defraud that the defendant would and did falsely and fraudulently certify that the PPP funds acquired from the requested PPP loans would be used to retain workers, maintain payroll, or make mortgage interest payments, lease payments, and utility payments.

        d.      It was further part of the scheme and artifice to defraud that, as part of a PPP loan application for Paradise Center A&R Immigrant Inc., the defendant would and did falsely and fraudulently certify that Paradise Center A&R Immigrant Inc. had 10 employees and an average monthly payroll of $96,703.00.

        e.      It was further part of the scheme and artifice to defraud that, as part of a PPP loan application for Paradise Center A&R Immigrant Inc. the defendant would and did falsely and fraudulently certify that he was not "presently . . . on probation."

        f.      It was further part of the scheme and artifice to defraud that, as part of a PPP loan application for Paradise Center A&R Immigrant Inc. the defendant would and did falsely and fraudulently certify that within the last five years he had not "1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation" for any felony.

        g.      It was further part of the scheme and artifice to defraud that the defendant would and did submit false and fraudulent supporting documentation to Cross River Bank and BlueVine, including false Paradise Center A&R Immigrant Inc. quarterly Federal tax returns.

h.      It was further part of the scheme and artifice to defraud that the defendant's materially false, fraudulent, and misleading representations regarding himself and Paradise Center A&R Immigrant Inc. would and did cause Cross River Bank and BlueVine to approve the PPP application and to deposit approximately $241,757 in PPP funds into a Wells Fargo Bank Checking Account under the defendant's control.

i.      It was further part of the scheme and artifice to defraud that the defendant would and did use and cause PPP funds and EIDL funds to be used for unauthorized purposes and for his own personal enrichment, including the purchase and construction of residential properties and to fund investments with Robinhood Markets Inc.

j.      It was further part of the scheme and artifice to defraud that the defendant would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in furtherance of the scheme to defraud.

## D.  <u>Execution of the Scheme and Artifice</u>

20.     On or about the date set forth below, in the Middle District of Florida and elsewhere, the defendant,

JOHNSON W. EUSTACHE,

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

| Count | On or About Date | Interstate Wire |
|-------|------------------|-----------------|
| ONE | May 5, 2020 | Wire transfer in the amount of $241,757 from a Cross River Bank account into a Wells Fargo account ending in 4384 controlled by JOHNSON W. EUSTACHE in Florida, processed using servers located outside of Florida |

All in violation of 18 U.S.C. § 1343.

## COUNT TWO
### (Aiding and Assisting Preparation of False Tax Return)

On or about February 12, 2021, in the Middle District of Florida, the defendant,

JOHNSON W. EUSTACHE,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service of, a 2020 individual U.S. Income Tax Return for A.R., including Forms 1040 and 1040 Schedule C, under and in connection with matters arising under the Internal Revenue laws, which return was false and fraudulent as to material matters, in that the return

represented that A.R. was entitled to claim deductions for losses of $15,239 from a Schedule C business and losses of $6,000 from a Schedule 1 Adjustment to Income, whereas, as the defendant then and there knew, A.R. was not entitled to claim deductions in the claimed amounts.

In violation of 26 U.S.C. § 7206(2).

## FORFEITURE

1.      The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.      Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.      The property to be forfeited includes, but is not limited to, the following:

    a. an order of forfeiture in the amount of $1,343,029.50, which represents the proceeds obtained from the offense;

    b. approximately $150,137.34 seized from Mid Florida Credit Union account #128651399 held in the name of Home Refresh Handyman, Inc.;

11

c.  approximately $181,552.04 seized from Space Coast Credit Union account #8100008906711 held in the name of First Shooting Film Production LLC;

d.  approximately $37,161.15 seized from Space Coast Credit Union account #8100008919698 held in the name of Needfulchild Inc.;

e.  approximately $105,164.18 seized from Space Coast Credit Union account #8100009303066 held in the name of Heritage Blue Builders LLC;

f.  approximately $225,225.61 seized from the sale of the real property located on Anzio Dr. in Kissimmee, FL previously owned by Paradise Tax Center Bank LLC;

g.  1510 Shamrock Ave. SE, Palm Bay, FL 32909 titled in the name of Paradise Tax Center Bank LLC;

h.  411 Flamingo Ct., Poinciana, FL 34759 titled in the name of Paradise Tax Center Bank LLC;

i.  2070 Agora Cir. SE, Palm Bay, FL 32909 titled in the name of Paradise Tax Center Bank LLC;

j.  612 Osmosis Dr. SW, Palm Bay, FL 32908 titled in the name of Paradise Tax Center Bank LLC;

k.  624 Osmosis Dr. SW, Palm Bay, FL 32908 titled in the name of Paradise Tax Center Bank LLC;

l.  636 Osmosis Dr. SW, Palm Bay, FL 32908 titled in the name of Paradise Tax Center Bank LLC;

m.  1350 Wade St. SE, Palm Bay, FL 32909 titled in the name of Paradise Tax Center Bank LLC;

n.  1362 Wade St. SE, Palm Bay, FL 32909 titled in the name of Paradise Tax Center Bank LLC; and

o.  1183 Raoul St. SE, Palm Bay, FL 32909 titled in the name of Paradise Tax Center Bank LLC.

4.    If any of the property described above, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

KARIN HOPPMANN
Acting United States Attorney

By: _____
Chauncey A. Bratt
Assistant United States Attorney

By: _____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

14