AF Approval MML                                    Chief Approval RBH

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO.  6:21-cr-98-ACC-GJK

JOHNSON W. EUSTACHE

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Karin Hoppmann, Acting United States Attorney for the Middle District of

Florida, and the defendant, JOHNSON W. EUSTACHE, and the attorney for

the defendant, Susan Malove, Esq., mutually agree as follows:

### A. **Particularized Terms**

#### 1. Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and

Two of the Information.  Count One charges the defendant with wire fraud, in

violation of 18 U.S.C. § 1343.  Count Two charges the defendant with

willfully aiding and assisting in the preparation of a false tax return, in

violation of 26 U.S.C. § 7206(2).

Defendant's Initials _JV_

2. Maximum Penalties

Count One carries a maximum sentence of 20 years' imprisonment, a maximum fine of $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than 3 years, and a special assessment of $100.

Count Two carries a maximum sentence of 3 years' imprisonment, a maximum fine of $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than 1 year, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

Defendant's Initials     2

First: The defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

Second: The false pretenses, representations, or promises were about a material fact;

Third: The defendant acted with the intent to defraud; and

Fourth: The defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

The elements of Count Two are:

First: The defendant aided or assisted in, or procured, counseled, or advised the preparation or presentation of a return under or in connection with a matter arising under the Internal Revenue laws;

Second: The return falsely stated that the taxpayer incurred losses of $15,239 from a Schedule C business or falsely stated that the taxpayer incurred losses of $6,000 from a Schedule 1 Adjustment to Income;

Third: The defendant knew that the statement in the return was false;

Fourth: The false statement was material; and

Fifth: The defendant did so with the intent to do something the defendant knew the law forbids.

4.    Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

Defendant's Initials _____        3

5.     No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, relating to the conduct giving rise to this plea agreement.

6.     Mandatory Restitution to Victim of Count One

Pursuant to 18 U.S.C. § 3663A(a), defendant agrees to make full restitution to the victims of his wire fraud scheme of $1,343,029.50.

7.     Discretionary Restitution to Victim of Count Two

Pursuant to 18 U.S.C. § 3663(a)(3) and (b), defendant agrees to make full restitution to the Internal Revenue Service of $87,044.

8.     Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant

Defendant's Initials _____      4

will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.      Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot

Defendant's Initials _____      5

and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: a money judgment in the amount of $1,343,029.50, which is the amount of proceeds the defendant admits he obtained as the result of the commission of the wire fraud scheme to which the defendant is pleading guilty, as well as the following assets which constitute funds obtained by the defendant through the scheme or properties purchased by the defendant using proceeds from the scheme:

      a. approximately $150,137.34 seized from Mid Florida Credit Union account #128651399 held in the name of Home Refresh Handyman, Inc.;[1]

---

[1] The defendant admits that this account was funded with $165,000 in fraudulently-obtained PPP loan proceeds that the defendant applied for without the full knowledge and consent of Home Refresh Handyman, Inc. or its officers. Therefore, the defendant admits that neither the company nor its officers are bona fide purchasers for value of their interest in the fraudulently-obtained loan proceeds.

Defendant's Initials _____      6

b. approximately $181,552.04 seized from Space Coast Credit Union account #8100008906711 held in the name of First Shooting Film Production LLC;[2]

c. approximately $37,161.15 seized from Space Coast Credit Union account #8100008919698 held in the name of Needfulchild Inc.;[3]

d. approximately $105,164.18 seized from Space Coast Credit Union account #8100009303066 held in the name of Heritage Blue Builders LLC;[4]

e. approximately $225,225.61 seized from the sale of the real property located on Anzio Dr., in Kissimmee, FL previously owned by Paradise Tax Center Bank LLC;[5]

f. 1510 Shamrock Ave. SE, Palm Bay, FL 32909 titled in the name of Paradise Tax Center Bank LLC;

g. 411 Flamingo Ct., Poinciana, FL 34759 titled in the name of Paradise Tax Center Bank LLC;

h. 2070 Agora Cir. SE, Palm Bay, FL 32909 titled in the name of Paradise Tax Center Bank LLC;

i. 612 Osmosis Dr. SW, Palm Bay, FL 32908 titled in the name of Paradise Tax Center Bank LLC;

j. 624 Osmosis Dr. SW, Palm Bay, FL 32908, titled in the name of Paradise Tax Center Bank LLC;

---

[2] The defendant agrees to the forfeiture of these funds individually and as the sole owner and signatory of the account from which the funds were seized.

[3] The defendant agrees to the forfeiture of these funds individually and as the sole owner and signatory of the account from which the funds were seized.

[4] The defendant agrees to the forfeiture of these funds individually, as the sole owner and signatory of the account from which the funds were seized, and as a manager on behalf of Heritage Blue Builder LLC.

[5] The defendant agrees on behalf of himself individually, and as the President of Paradise Tax Center Bank LLC, to the forfeiture of the properties titled in the name of Paradise Tax Center Bank LLC.

Defendant's Initials _____        7

    k. 636 Osmosis Dr. SW, Palm Bay, FL 32908 titled in the name
       of Paradise Tax Center Bank LLC;

    l. 1350 Wade St. SE, Palm Bay, FL 32909, titled in the name of
       Paradise Tax Center Bank LLC;

    m. 1362 Wade St. SE, Palm Bay, FL 32909 titled in the name of
       Paradise Tax Center Bank LLC; and

    n. 1183 Raoul St. SE, Palm Bay, FL 32909, titled in the name of
       Paradise Tax Center Bank LLC.

The net proceeds from the forfeiture and sale of any specific asset will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

      The defendant acknowledges and agrees that (1) the defendant obtained $1,343,029.50 as a result of the commission of the offense and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds

Defendant's Initials _____       8

obtained from commission of the offense and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein

Defendant's Initials _____     9

constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by

Defendant's Initials _____     10

the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials _l l_          11

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

### 11.    Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States.  Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic

Defendant's Initials _____          12

removal from the United States following completion of the defendant's sentence.

**B.** **Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure

Defendant's Initials _____        13

that this obligation is satisfied, the Defendant agrees to deliver a check or

money order to the Clerk of the Court in the amount of $~~100.00~~ 200.00 , payable to   CB TRA

"Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to

fine.

> 2.   Supervised Release

The defendant understands that the offense to which the

defendant is pleading provides for imposition of a term of supervised release

upon release from imprisonment, and that, if the defendant should violate the

conditions of release, the defendant would be subject to a further term of

imprisonment.

> 3.   Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon

conviction, a defendant who is not a United States citizen may be removed

from the United States, denied citizenship, and denied admission to the

United States in the future.

Defendant's Initials _____          14

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United

Defendant's Initials _____        15

States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States

Defendant's Initials _____        16

Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to

Defendant's Initials _____      17

appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges

Defendant's Initials _____        18

defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _____      19

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____        20

13. Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this $\underline{28}$ day of $\underline{June}$ , 2021.

KARIN HOPPMANN
Acting United States Attorney

JOHNSON W. EUSTACHE
Defendant

Chauncey A. Bratt
Assistant United States Attorney

Susan Malove, Esq.
Attorney for Defendant

Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____        21

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 6:21-cr-

JOHNSON W. EUSTACHE

PERSONALIZATION OF ELEMENTS

**Count One**

First:    Did you knowingly devise or participate in
          a scheme to defraud, or to obtain money or property
          by using false pretenses, representations, or
          promises?

Second:   Were the false pretenses, representations, or
          promises about a material fact?

Third:    Did you act with the intent to defraud?

Fourth:   Did you transmit or cause to be transmitted by wire
          some communication in interstate commerce to
          help carry out the scheme to defraud?

**Count Two**

First:    Did you aid or assist in, or procure, counsel, or
          advise the preparation or presentation of a return
          under or in connection with a matter arising under
          the Internal Revenue laws?

Second:   Did the return falsely state that the taxpayer
          incurred losses of $15,239 from a Schedule C
          business or falsely state that the taxpayer incurred
          losses of $6,000 from a Schedule 1 Adjustment to
          Income?

Defendant's Initials           22

| Third: | Did you know that the statement in the return was false? |
|---|---|
| Fourth: | Was the false statement material? |
| Fifth: | Did you do so so with the intent to do something that you knew the law forbids? |

Defendant's Initials _____   23

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                      CASE NO. 6:21-cr-

JOHNSON W. EUSTACHE

### FACTUAL BASIS

*Background on CARES Act*

In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 emergency. Among its various provisions, the CARES Act authorized the U.S. Small Business Administration ("SBA") to guarantee loans under the Paycheck Protection Program ("PPP"), and the full principal amount of the loans could qualify for forgiveness. Borrowers were required to use PPP loan proceeds only for enumerated purposes, including payroll costs, rent and utilities, and mortgage interest payments.

Under the PPP, the loan amount for qualifying small businesses was calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula considered the borrower's total payroll costs from the preceding twelve months for all domestic employees. Once an average

Defendant's Initials _____        24

monthly payroll cost was established, the borrower would multiply that figure by 2.5 to arrive at a total maximum PPP loan amount. To apply for a PPP loan, a potential borrower electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that would administer the loan and serve as custodian of the funds.

Further provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed for the SBA to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic. Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application. The application process involved filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to COVID-19 impact on the national economy. This information furnished by the applicant was then used by SBA application evaluation systems to calculate the principal amount of money the small business was eligible to receive in the form of an EIDL.

Defendant's Initials _____        25

*PPP and EIDL Loan Fraud by EUSTACHE*

Between March 27, 2020, and April 5, 2021, JOHNSON W.

EUSTACHE ("EUSTACHE") submitted to the SBA and other lenders 13

different applications for PPP or EIDL loans for businesses controlled by

EUSTACHE, his relatives, or his girlfriend M.F., that had few if any

employees besides EUSTACHE. These applications included the following:

1. Application submitted by EUSTACHE to SBA on March 27, 2020, using business name of First Shooting Film Production, for EIDL loan of unspecified amount.

2. Application submitted by EUSTACHE to SBA on March 30, 2020, using business name of Paradise Center A&R Immigrant Inc., for EIDL loan of $2,100.

3. Application submitted by EUSTACHE to SBA on April 1, 2020, using business name of Needfulchild, Inc., for EIDL loan of $160,000.

4. Application submitted by EUSTACHE to Harvest Small Business Finance LLC on April 3, 2020, using business name of First Shooting Film Production, LLC, for PPP loan of $191,972.50

5. Application submitted by EUSTACHE to Wells Fargo on April 20, 2020, using business name of Paradise Center A&R Immigrant Inc., for PPP loan of $50,366.

6. Application submitted by EUSTACHE to Harvest Small Business Finance LLC on April 23, 2020, using business name of Needfulchild, Inc., for PPP loan of $272,500.

7. Application submitted by EUSTACHE to Harvest Small Business Finance LLC on April 24, 2020, using business name of Paradise Tax Center Bank, LLC, for PPP loan of $137,355.

8. Application submitted by EUSTACHE to Cross River Bank on May 3, 2020, using business name of Paradise Center A&R Immigrant Inc., for PPP loan of $241,757.

Defendant's Initials $\underline{\smash{\mathcal{Q}\mathcal{V}}}$          26

9.  Application submitted by EUSTACHE to Funding Circle on May 19, 2020, using business name of Home Refresh Handyman Inc., for PPP loan of $165,000.

10. Application submitted by EUSTACHE to SBA on June 17, 2020, using business name of Home Refresh Handyman Inc., for EIDL loan of $160,000.

11. Application submitted by EUSTACHE to SBA on August 6, 2020, using business name of Heritage Blue Builder, for EIDL loan of $150,000.

12. Application submitted by EUSTACHE to Legacy Bank on February 21, 2021, using business name of Needfulchild, Inc., for PPP loan of $413,784.

13. Application submitted by EUSTACHE to Itria Ventures LLC on April 5, 2021, using business name of Heritage Blue Builder, for PPP loan of $226,692.50.

Each of these 13 loan applications contained material misstatements about the businesses on behalf of which EUSTACHE purported to be seeking the loans. For instance, in each of these loan applications, EUSTACHE made false representations regarding the business's number of employees and amount of payroll. In many of these loan applications, EUSTACHE also falsely indicated that he was not currently on probation for any felony offense and that he had not been convicted of a felony for the past five years. In fact, on December 3, 2019, EUSTACHE had been convicted in Brevard County, Florida for (1) Unauthorized Practice of Law and (2) Organized Fraud to Obtain Property, for which he was sentenced to a five-year term of probation.

Defendant's Initials _____      27

EUSTACHE was serving this term of probation at the time that he submitted each of the loan applications at issue in this case.

With respect to each of the PPP loans for which EUSTACHE submitted applications, EUSTACHE falsely and fraudulently certified that the PPP funds acquired from the requested PPP loans would be used to retain workers, maintain payroll, or make mortgage interest payments, lease payments, and utility payments.

The total amount of EIDL and PPP funds that EUSTACHE fraudulently applied for was $2,151,527, which the parties agree represents the total intended loss amount in this case. Because some of the loan applications were rejected, the total amount of loan proceeds that EUSTACHE actually obtained through his fraud scheme was $1,343,029.50, which represents the actual loss amount in this case. EUSTACHE used most of the loan proceeds for his own personal enrichment, such as to fund investments with Robinhood Markets Inc. and to purchase or construct real and residential properties, including the following:

1. 1510 Shamrock Ave SE, Palm Bay, FL 32909
2. 411 Flamingo Ct., Poinciana, FL 34759
3. 153 Anzio Dr., Kissimmee, FL 34758
4. 2070 Agora Cir. SE, Palm Bay, FL 32909
5. 612 Osmosis Dr SW, Palm Bay, FL 32908
6. 624 Osmosis Dr SW, Palm Bay, FL 32908

Defendant's Initials         28

7. 636 Osmosis Dr SW, Palm Bay, FL 32908

8. 1350 Wade St. SE, Palm Bay, Florida 32909

9. 1362 Wade St. SE, Palm Bay, Florida 32909

10. 1183 Raoul St SE, Palm Bay, Florida 32909

*Wire Charged in Count One*

One of the fraudulent PPP loan applications submitted by

EUSTACHE was an application that he submitted to Cross River Bank on

May 3, ~~2021~~ **2020**, in the name Paradise Center A&R Immigrant Inc., a company

that EUSTACHE owned and controlled for which EUSTACHE was the

President. At the time that EUSTACHE submitted the loan application,

Paradise Center A&R Immigrant Inc. had few if any employees besides

EUSTACHE, and it did not, in fact, make any payroll payments in 2019 or

2020. EUSTACHE falsely and fraudulently certified in the loan application

that as of May 3, ~~2021~~ **2020**, Paradise Center A&R Immigrant Inc. had 10

employees and an average monthly payroll of $96,703.00. In support of this

false certification, EUSTACHE prepared and submitted to Cross River Bank

fake Federal tax returns for Paradise Center A&R Immigrant Inc.

EUSTACHE also fraudulently certified in this loan application that

he was not "presently . . . on probation," and that within the last five years he

had not "1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4)

Defendant's Initials         29

been placed on pretrial diversion; or 5) been placed on any form of parole or probation" for any felony.

EUSTACHE's false representations regarding himself and Paradise Center A&R Immigrant Inc., as well as the fake Federal tax returns that he submitted as supporting documentation, caused Cross River Bank to approve the PPP application. On May 5, ~~2021~~ 2020, Cross River Bank transferred $241,757 in PPP funds into a Wells Fargo checking account ending in 4384 controlled by EUSTACHE in Florida. This transfer involved the use of servers in Minnesota, Pennsylvania, and Virginia to transfer the funds to EUSTACHE in Florida, and thus constituted an interstate wire. EUSTACHE then used these funds to make investments with Robinhood Markets Inc. and to make payments for a new personal residence.

*Aiding and Assisting Preparation of False Tax Returns by EUSTACHE*

In 2015, EUSTACHE applied for and received a preparer tax identification number ("PTIN") from the IRS. IRS records show that EUSTACHE used this PTIN to file over 200 tax returns for taxpayers between 2017 and 2020, and that he also filed a number of returns for taxpayers using this PTIN during 2021. 28 of these tax returns prepared by EUSTACHE between 2017 and 2020 contained false adjustments, false income amounts, or false deductions, which EUSTACHE included to fraudulently inflate the

Defendant's Initials           30

amount of the taxpayers' refunds. These false items that EUSTACHE

claimed on behalf of taxpayers included bogus Schedule C businesses, false

Schedule 1 Adjustment to Income deductions, false Household Employee

(HSH) income,[6] and false W-2 wages. The total tax loss to the IRS as a result

of the false statements in the tax returns was $87,044. Seven of the taxpayers

for whom EUSTACHE claimed these false items were interviewed by the IRS.

Each of them confirmed that EUSTACHE prepared their tax returns, and that

they did not provide EUSTACHE with the false and fraudulent information

that he included in their returns.

*Count Two*

On February 12, 2021, EUSTACHE prepared and submitted to the IRS

a false 2020 individual U.S. Income Tax Return on behalf of taxpayer A.R.

EUSTACHE falsely indicated in the return that A.R. had suffered losses in

2020 of $15,239 from a Schedule C business that provided "home care."

EUSTACHE also falsely indicated in the return that A.R. had suffered

additional losses in 2020 of $6,000 in a Schedule 1 Adjustment to Income.

IRS Agents interviewed A.R. on April 16, 2021. A.R. identified

EUSTACHE as the tax preparer who had prepared A.R.'s taxes for the 2019

and 2020 tax years. A.R. stated that she met with EUSTACHE in person

---

[6] EUSTACHE reported false HSH income on certain returns in order to maximize the tax credits the taxpayers would receive and thereby falsely increase the taxpayers' tax refunds.

Defendant's Initials _____                    31

during her first meeting with him at his office in Palm Bay, Florida, and since then has emailed her tax documents to him.

Agents showed A.R. her individual U.S. Income Tax Return for 2019 that EUSTACHE submitted on her behalf. On this return, EUSTACHE misreported A.R.'s income by omitting approximately $2,000 in income from the W-2s that A.R. had provided to EUSTACHE. EUSTACHE also falsely claimed an unspecified Schedule 1 Adjustment to Income of $6,060. A.R. stated that she did not provide any information to EUSTACHE that would have entitled her to those adjustments and that EUSTACHE did not have any discussions with her about any deductions.

Agents then showed A.R. her individual U.S. Income Tax Return for 2020 that EUSTACHE submitted on her behalf. A.R. confirmed that the W-2 information reported on this return was correct, but she stated that she had never operated a business of any kind, much less a "home care" business. A.R. expressed shock that EUSTACHE had claimed that she suffered losses from a business, and she stated that she had not provided him with any information claiming that she had a business or any information relating to business losses. A.R. also stated that she did not know why a reduction to her income of $6,000 had been reported by EUSTACHE and that she never had any conversation with EUSTACHE about such a reduction.

Defendant's Initials _____    32

*Interview of Eustache on March 8, 2021*

EUSTACHE was interviewed by law enforcement agents on March 8, 2021.  During this interview, EUSTACHE stated that he has been preparing taxes for nine years and that his office is in Palm Bay, FL.  EUSTACHE admitted to submitting PPP and/or EIDL loan applications for Paradise Center A&R Immigrant Inc., Paradise Tax Center Bank, First Shooting Film Production LLC, Needfulchild Inc., Home Refresh Handyman Inc., and Heritage Blue Builder LLC.  EUSTACHE denied using these funds to purchase properties and stated that he knew that the money from EIDL loans could only be used to pay business expenses and that the money from PPP loans could only be used to pay employees.

An FBI Financial Investigator conducted a tracing analysis for each of the 10 properties purchased and/or constructed by EUSTACHE since March 2020, and each of these properties was purchased by EUSTACHE using funds that he obtained through the aforementioned PPP or EIDL loans.  None of the PPP loan proceeds were used to make payroll payments.

Defendant's Initials _____        33